UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

KEITH BURGESS,

    Plaintiff,

v.

ROXBURY CORRECTIONAL
INSTITUTION,
DENISE GELSINGER, *Warden,* and
ROBERT WEHN, *CO II,*

    Defendants.

Civil Action No. TDC-20-1902

## MEMORANDUM OPINION

Plaintiff Keith Burgess, an inmate at the Maryland Correctional Institution-Jessup ("MCI-J") in Jessup, Maryland, has brought this civil rights action pursuant to 42 U.S.C. § 1983 against Roxbury Correctional Institution ("RCI"), RCI Warden Denise Gelsinger, and Correctional Officer II ("CO II") Robert Wehn. Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Burgess has not opposed the Motion. Having reviewed the pleadings and the submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

In his verified Complaint, Burgess alleges that on January 20, 2018 at approximately 5:30 p.m., while he was an inmate at RCI, he was stabbed by other inmates while returning to his cell after dinner. According to Burgess, he called out to Wehn and other officers but no one responded to assist him. Sometime later, Wehn, while conducting a prisoner count, saw Burgess bleeding

and lying on the floor of his cell but still failed to respond to his medical emergency. Wehn denies that he saw Burgess in his cell with injuries or that he denied Burgess access to medical treatment.

When the cell doors opened for recreation at approximately 6:45 p.m., Burgess tried to make his way to a correctional officer, but he was again stabbed from behind by multiple inmates. After this second assault, correctional officers came to his aid, and he was taken to the medical unit and ultimately to the hospital for treatment.

According to CO II Michael Wagaman, at the time of the second assault, he was assigned to Burgess's housing unit and observed several inmates attacking Burgess. Wagaman gave several commands to the inmates to stop fighting and when they failed to comply, he sprayed an MK9 fogger. Burgess had injuries to his face, back, and abdomen and was immediately escorted to the medical area and then to the hospital. When he returned from the hospital to RCI, he was placed on administrative segregation for his protection.

Following these events, the matter was referred to the Intelligence and Investigative Division ("IID") for investigation. Burgess did not cooperate with the investigation, called the matter a misunderstanding, and, on January 22, 2018, filed a Complaint Withdrawal form in which he requested that the investigation be closed. Prior to the assault, none of Burgess's assailants were listed in prison records as his enemies, and Burgess later stated that it was a random attack by "fellow" gang members. Mot. Dismiss Ex. 1 at 4, 6, ECF No. 17-2.

On January 28, 2018 and February 5, 2018, Burgess filed Administrative Remedy Procedure grievances ("ARP") complaining that some of his personal property was missing when he returned from the hospital. The ARPs were dismissed for procedural reasons, and Burgess did not refile them or appeal their dismissals. Burgess did not file an ARP regarding the assaults referenced in the Complaint.

In a Motion to Amend the Complaint, Burgess seeks to amend by requesting a jury trial. Where this Motion was not opposed, it will be granted.

## DISCUSSION

In their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(6) or summary judgment under Rule 56. In support of their Motion, Defendants argue that: (1) RCI is not a proper defendant because it is not a person within the meaning of 42 U.S.C. § 1983; (2) the claims against Warden Gelsinger should be dismissed because there is no vicarious liability under § 1983, and Burgess has alleged no facts demonstrating her personal involvement in the events in question; (3) Burgess failed to exhaust available administrative remedies; and (4) Burgess has failed to state sufficient facts to support his claims of constitutional violations based on the failure to protect him or provide access to medical care.

### I. Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

3

Here, Defendants have submitted exhibits with their Motion. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. As to the second requirement, the nonmoving party can show that a reasonable opportunity for discovery has not been afforded by filing an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). Here, Burgess, who has not filed a memorandum in opposition to the Motion, has not argued that discovery is necessary before summary judgment may be considered. Under these circumstances, the Court will construe Defendants' Motion as a Motion for Summary Judgment for purposes of the arguments requiring consideration of the attached exhibits.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the

4

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II. RCI

Defendants correctly argue that Burgess's claim against RCI under § 1983 must be dismissed. Section 1983 permits the filing of a civil action against a "person" acting under color of state law who causes a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983 (2018). RCI, which is operated by the Division of Correction, a division of the Maryland Department of Public Safety and Correctional Services, is a Maryland state agency. *See* Md. Code Ann., Corr. Servs. §§ 1-101(o), 3-201 (LexisNexis 2017). Neither a state nor a state agency is a "person" within the meaning of § 1983, so state agencies may not be sued under that provision. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64-65, 70 (1989). Moreover, state agencies are immune from suit in federal court under the Eleventh Amendment to the United States Constitution. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Consequently, the claims against RCI will be dismissed.

5

## III. Warden Gelsinger

Defendants are also correct that the claims against Warden Gelsinger must be dismissed because Burgess makes no direct allegations against her. To the extent that Burgess seeks to hold Warden Gelsinger responsible for the actions of subordinates, the doctrine of *respondeat superior*, or vicarious liability, is not applicable to § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). Under § 1983, any liability imputed to supervisory officials must be "premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984)). Thus, supervisory liability under § 1983 must be supported with evidence that: (1) "the supervisor had actual or constructive knowledge that [a] subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff"; (2) "the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (citations omitted).

Here, Burgess has failed to plead or demonstrate sufficient facts showing that Warden Gelsinger exhibited supervisory indifference to, or tacit authorization of, any misconduct. In particular, there is no allegation or evidence that Warden Gelsinger was aware of or involved in

the alleged failure to protect Burgess from an attack by fellow inmates or the alleged delay in securing medical care. Accordingly, the claims against Warden Gelsinger will be dismissed.

## IV. Exhaustion of Administrative Remedies

Defendants raise the affirmative defense that Burgess has failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (holding that "[a]n inmate must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable: an administrative procedure is not available when officers are "unable or consistently unwilling to provide any relief to aggrieved inmates," the procedure is "so opaque that it becomes, practically speaking, incapable of use," or "prison administrators thwart inmates from taking advantage of [filing grievances] through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60.

7

In Maryland prisons, for the type of grievance asserted by Burgess, the Administrative Remedy Procedure is the administrative process that must be exhausted. Md. Code Regs. § 12.02.28.02(B)(1), (D) (2018). First, a prisoner must file an ARP with the warden within 30 days of the incident at issue. Md. Code Regs. § 12.02.28.05(D)(1) (requiring filing with the "managing official"); Md. Code Regs. § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); Md. Code Regs. § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. Md. Code Regs. § 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210; Md. Code Regs. § 12.07.01.05(B). Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. *See* Md. Code Ann., Corr. Servs. § 10-210(a).

Here, Burgess failed to exhaust administrative remedies. While Burgess filed ARPs relating to the loss of personal property while he was in the hospital, he did not include in those ARPs, and did not file a separate ARP, asserting the grievances underlying the Complaint in this action, that correctional officers failed to protect him from the assaults or arrange for medical care in a timely manner. To the extent that Burgess might argue that an IID investigation could be deemed to be a means to exhaust administrative remedies, Burgess did not pursue his complaint through that process and instead affirmatively filed a withdrawal of his claim before the resolution of the investigation. Accordingly, Burgess's remaining claims will be dismissed for failure to exhaust administrative remedies.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, will be GRANTED. A separate Order shall issue.

Date: June 30, 2021

THEODORE D. CHUANG
United States District Judge